RSI (INDIA) PVT., LTD., South Bay Foundry, Creswell Trading Company and City Pipe Company, Plaintiffs–Appellants,

Kajaria Castings Pvt., Ltd., Kejriwal Iron & Steel Works, Seramporte Industries Pvt., Ltd., UMA Iron & Steel Company, Commex Corp., Govind Steel Co., Ltd. and East Coast Manufacturing, Plaintiffs,

v.

The UNITED STATES, Malcolm Baldrige, Secretary of Commerce, Gilbert B. Kaplan, Deputy Assistant Secretary of Commerce for Import Administration and William Von Raab, Commissioner of Customs, Defendants–Appellees,

Pinkerton Foundry Inc., Alhambra Foundry Co., Allegheny Foundry Co., Campbell Foundry Co., Deeter Foundry Inc., East Jordan Iron Works, Inc., Lebaron Foundry Inc., Municipal Castings Inc., Neenah Foundry Co., U.S. Foundry & Mfg. Corp. and Vulcan Foundry Inc., Defendants.

No. 89–1080.

United States Court of Appeals, Federal Circuit.

June 1, 1989.

Ronald M. Wisla, of Brownstein Zeidman and Schomer, Washington, D.C., argued for plaintiffs-appellants. With him on the brief were Irwin P. Altschuler and Claudia

G. Pasche, of Brownstein Zeidman and Schomer, Washington, D.C.

Elizabeth C. Seastrum, of the Civil Div., Dept. of Justice, Washington, D.C., argued for defendants-appellees. With her on the brief were John R. Bolton, Asst. Atty. Gen., and David M. Cohen, Director. Of counsel were Michael A. Levitt, Acting Gen. Counsel, Stephen J. Powell, Chief Counsel, and Mark J. Sadoff, Atty.-Advisor, U.S. Dept. of Commerce. Paul C. Rosenthal, of Collier, Shannon, Rill & Scott, Washington, D.C., argued for defendants Pinkerton Foundry Inc., et al. With him on the brief was Carol A. Mitchell, of Collier, Shannon, Rill & Scott, Washington, D.C.

Before MARKEY, Chief Judge, NICHOLS, Senior Circuit Judge, and NEWMAN, Circuit Judge.

NICHOLS, Senior Circuit Judge.

This appeal presents for our review a series of decisions by the Court of International Trade (687 F.Supp. 605 (1988), *reh'g denied*, 688 F.Supp. 646 (1988)) which, in the end, affirm the determination of the Department of Commerce, International Trade Administration (ITA or Agency), 45 Fed.Reg. 68, 650 (1980), and dismiss the proceeding. 693 F.Supp. 1189. The case involved the 1984 annual review establishing that the amount of bounty or grant paid by the Government of India in that year upon export of iron-metal construction castings, *e.g.*, manhole covers, was 7.31 percent *ad val.* Appellants are RSI and three companies that import the products here. RSI paid an export subsidy but contended it was not countervailable because all it did was, in effect, to provide by the subsidy a component of the article, pig iron, at the world price instead of the artificially maintained higher price within India. The Agency, for reasons whose validity comprises the chief issue for our decision, held the subsidy was countervailable in its entirety with no offset. The Court of International Trade decided some aspects of the case not here on appeal, rejected a government motion to dismiss the appellant importers as not having been parties before the ITA, and affirmed the refusal of the ITA to calculate the world price of the pig iron actually used and to allow the subsidy to offset the difference between the world price and the price the producers actually had to pay within India. We affirm.

## Background

The problem arose from a 19 U.S.C. § 1671 and ff countervailing duty order on manhole covers and frames, cleanout covers and frames, and catch basins from India classifiable under TSUS items 657.0950 and 657.0990. The annual review under section 1675(a)(1) for 1984 revealed a subsidy ostensibly but not really meant as an offset to the fact that an Indian producer had to get the pig iron used in production at the artificially maintained Indian price, not the world price, understood to be much lower. However, in calculating the subsidy the Indian Government used a world price based on an earlier single purchase by the Indian Government which the ITA would not accept as a world price. It was of the opinion that pig iron did not, like many other commodities, have an established, ascertainable world price. Moreover, the subsidy formula was based on a standard consumption factor of 70 percent of the exported castings by weight, whereas the actual consumption "among the exporters we verified" was significantly lower than the standard factor.

> Because of these difficulties, we cannot determine whether the IPRS [the subsidy] is non-distortive of market forces, a functional equivalent of duty drawback or consistent with item (d) of the Illustrative List.

51 Fed.Reg. 45,789. The list in question is a list prepared under the General Agreement on Tariffs and Trade (GATT) which, by 19 U.S.C. §§ 2502(1) and 2503(c)(5), the Congress incorporated into United States law. In effect it makes the provision by governments of goods or services to producers for export countervailable only to the extent the terms or conditions are more favorable than those that would be available on world markets to its exporters. The appellants contended to the trial court that by this provision the ITA was required

to determine a world price or estimate one for pig iron and also to ascertain a proper figure for the pig iron content of the exported articles. They did not attempt to defend the entire subsidy as proper, but thought that part of it was, and by law the ITA could not base its countervailing duty figures on the proper as well as the improper parts. In their view, the countervailing duty law was remedial, not punitive. The law, they say, requires a duty "equal to the net amount of such bounty or grant," 19 U.S.C. § 1303(a); *see also* 19 U.S.C. § 1671(a). They quote legislative history reflecting that the "value" of the subsidy must be determined and must adequately represent or estimate the benefit actually bestowed.

■ In course of the proceeding in the trial court, the government first made a contention it repeats here. The statute, it says, 19 U.S.C. § 1516a(a)(2)(A), allows a Court of International Trade challenge to a countervailing duty determination only to one who is "an interested party who is a party to the proceeding in connection with which the matter arises." *See also* 28 U.S.C. § 2631(c). It says the appellants, South Bay Foundry, et al., were not such parties in the ITA because they did not appear within 30 days of the publication of the Department's preliminary results of administrative review, nor did they appear with the permission of the Secretary after a "showing of good cause" to his satisfaction. 19 C.F.R. § 355.7(i)(4). Their participation certainly came late, and the Secretary or his designates never formally passed upon any showing of "good cause." However, appellants filed a brief which became and is part of the present administrative record. The trial court found the "Secretary" considered it as he is presumed to consider everything properly before him.

## Opinion

### I

Taking first the objection to the standing here of South Bay Foundry, et al., the importers, they are unquestionably interested parties and no one suggests otherwise. We are not referred to any statute such as are sometimes encountered, which makes untimely pursuit of a remedy jurisdictional with no provision for waiver or extension. The "Secretary" might have exacted a more formal application to become a party, but we do not think South Bay Foundry, et al. should suffer for the Secretary's apparent laxness. We think by silence he implicitly found good cause for letting the brief remain in his record. We agree with the Court of International Trade, *RSI (India) Pvt., Ltd. v. United States*, 678 F.Supp. 304, 307 (1988) that

[t]he participation requirement is obviously intended only to bar action [in court] by someone who did not take the opportunity to further its interests at the administrative level.

In other words, the statute is meant to protect the primary jurisdiction of the ITA, not to set a trap for unwary importers. Here the ITA knew of the concern of the importers and was made aware of what they had to say. That was the purpose of requiring them to be parties before the ITA if they were going to litigate afterwards.

### II

■ The really significant legal question here is whether, as RSI and the importers argue, the provisions cited above require the ITA to analyze the subsidy, separate the rupees that might legitimately have been awarded to offset the excess paid for pig iron in India over the world price, from other and, from the point of view of the GATT, illegitimate subsidy, and calculate a duty to countervail the latter only. The ITA objects that such a calculation would be an imaginary construction. The law does not, it says, require it to postulate a calculation RSI made no attempt to construct in the real world, one whose existence was ostensible only.

We are fortunate in having guidance in a past decision of this court: *Industrial Fasteners Group, American Importers Ass'n v. United States*, 710 F.2d 1576, 1 Fed.Cir. (T) 81 (1983) (Davis, J.). There are differences between that case and this, but we do not think they are such as would justify a different result. It involved industrial

fasteners from India, subsidized at 17½ percent ostensibly to offset the impact of internal indirect taxes. It was established by the ITA that the impact of actual indirect taxes was under 17½ percent, and that sum was awarded on the basis of "other criteria." This court held that the subsidy should have been calculated on the basis of the actual tax experience of the product under investigation. Although it is clear from the opinion that indirect taxes were paid in some amount, and properly calculated beforehand need not have been countervailed, a figure selected for other reasons could not have been retroactively justified by the incurrence of indirect taxes in any amount.

There are three differences between that case and this, differences we deem immaterial. First, that case dealt with a subsidy to offset domestic indirect taxes, this deals with an asserted offset of a high cost of a necessary raw material in a protected home market. Second, there was an ITA publication relied on there as supporting the result: no counterpart publication is relied on here; however, the court there refers to no GATT provision as having a bearing, such as we have here. Third, the appellants there did not offer to accept a reduced countervailing duty based on the actual tax experience, and no such possibility is reflected in the court's opinion. We think none of these points argue persuasively for a different result. The significant point is, we think, that the ITA is under no legal duty to construct an imaginary noncountervailable subsidy when the real subsidy is not shown to have been constructed in any such way and can not be shown to be nondistortive of market forces. We think on principle the ITA is right and we would affirm it on this point even if we had no authority to follow, binding on us. We would be most reluctant to substitute our uninformed judgment for the ITA's expertise with respect to the economic effect of an undisputed "bounty or grant," and how much duty is necessary to countervail it. We accept ITA's view that an imaginary subsidy construction is no help in determining the real world economic impact of an illegitimate actual subsidy. Its decision is supported by substantial evidence and not arbitrary and capricious or contrary to law: that is all we need to hold in order to affirm.

AFFIRMED.